Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| OSCAR LUIS ORTIZ SANTIAGO<br><br>Parte Apelante<br><br><br>v.<br><br><br><br>GENERA P.R., LLC<br><br>Parte Apelada | TA2026AP00248 | *APELACIÓN procedente* del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2025CV10295<br><br>Sobre: Despido Injustificado, Ley de Represalias, Discrimen, Procedimiento Sumario |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora

Salgado Schwarz, Carlos G., Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 5 de mayo de 2026

Comparece el señor Oscar Luis Ortiz Santiago ("Sr. Ortiz" o "Apelante") y solicita que revoquemos la Sentencia emitida el 25 de febrero de 2026[1] por el Tribunal de Primera Instancia, Sala Superior de San Juan ("foro de instancia" o "foro apelado"). En esa ocasión, el foro de instancia desestimó la Querella presentada por el Sr. Ortiz por falta de jurisdicción. Además, ordenó al licenciado Zayas a pagarle a Genera PR, LLC ("Genera PR" o "Apelada") la suma de cinco mil dólares ($5,000.00) por honorarios por temeridad.

Por los fundamentos que exponemos a continuación, ***confirmamos*** la determinación apelada.

---

[1] Notificada el 26 de febrero de 2026.

-I-

A continuación, detallamos los hechos pertinentes a la controversia de epígrafe.

El 11 de julio de 2024, el Sr. Ortiz presentó una Querella ante el foro de instancia contra Genera PR al amparo de las siguientes leyes: Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como *Ley Sobre Despidos Injustificados*; Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, conocida como *Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial*; Ley Núm. 100 de 30 de junio de 1959, según enmendada, conocida como *Ley Antidiscrimen de Puerto Rico*; y Ley Núm. 2 de 17 de octubre de 1961, según enmendada, conocida como *Ley de Procedimiento Sumario de Reclamaciones Laborales*.

Posteriormente, el 17 de diciembre de 2024, el Sr. Ortiz presentó un cargo contra Genera PR ante el *National Labor Relations Board* ("NLRB") por alegado despido injustificado y represalia[2]. Mientras se encontraba pendiente de adjudicación el cargo ante el NLRB, el 28 de julio de 2025, Genera PR presentó una *Solicitud de Desestimación*[3] por falta de jurisdicción sobre la materia en el caso presentado ante el foro de instancia. En esa ocasión, la Apelada señaló que el NLRB ostenta jurisdicción exclusiva sobre las causas de acción de despido y represalias. Posteriormente, el Sr. Ortiz desistió voluntariamente del cargo ante el NLRB[4]. Así las

---

[2] Véase Entrada #9, Exhibit C, págs. 8-13 del expediente de Primera Instancia en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[3] Véase Entrada #9, Exhibit C, págs. 1-5 del expediente de Primera Instancia en SUMAC.
[4] Véase Entrada #1 del Apéndice del recurso de apelación en SUMAC.

cosas, el 31 de julio de 2025, el Sr. Ortiz presentó su *Oposición a Desestimación*[5].

Con el beneficio de ambas partes, el 11 de septiembre de 2025, el foro de instancia emitió una *Sentencia*[6] en la que declaró *Ha Lugar* la Solicitud de Desestimación presentada por Genera PR y desestimó el caso sin perjuicio. El foro apelado señaló que, en virtud de la ley federal, es el foro administrativo quien tiene jurisdicción exclusiva y sólo cuando el foro determine que no tiene jurisdicción podrán atenderse las causas de acción en el foro de instancia. Además, expresó que en este caso aplica la doctrina de impedimento colateral por sentencia, ya que el Apelante estaba impedido de volver a presentar la misma reclamación, en los mismos términos cuando otra sala hermana evaluó las alegaciones y determinó que no tenía jurisdicción.

El 7 de noviembre de 2025, el Sr. Ortiz presentó, por tercera ocasión, una *Querella*[7] por las mismas causales, a saber, Ley Núm. 80-1976, Ley Núm. 115-1991, Ley Núm. 100-1959 y Ley Núm. 2-1961. En esa ocasión, el Apelante alegó que, como se eliminó la disponibilidad del recurso de reconsideración en casos bajo la Ley Núm. 2-1961, y ante la desestimación sin perjuicio de la Querella, el mejor remedio era presentar la reclamación nuevamente, en lugar de presentar una apelación. El 24 de noviembre de 2025, Genera PR presentó su *Contestación a Querella*[8] reafirmando que el foro de instancia carece de jurisdicción sobre la materia. El 26 de noviembre de

---

[5] Véase Entrada #1, Anejo #3 del expediente de Primera Instancia en SUMAC.
[6] Véase Entrada #9, Exhibit B del expediente de Primera Instancia en SUMAC.
[7] Véase Entrada #1 del Apéndice del recurso de apelación en SUMAC.
[8] Véase Entrada#7 del Apéndice del recurso de apelación en SUMAC.

2025, la Apelada presentó una *Solicitud de Desestimación*[9]. En esa ocasión, alegó que la Querella carece de una reclamación que justifique la concesión de un remedio por los siguientes factores: impedimento colateral por sentencia, justiciabilidad y falta de jurisdicción sobre la materia. Además, Genera PR solicitó la imposición de sanciones al amparo de la Regla 9.3 de Procedimiento Civil[10].

El 27 de enero de 2026, el Sr. Ortiz presentó su *Oposición a Solicitud de Desestimación*[11]. Mediante dicha moción, argumentó que no aplica la doctrina de cosa juzgada debido a que la sentencia de desestimación fue sin perjuicio. Además, alegó que nunca fue miembro bona fide de una Unión en Genera PR, por lo que el NLRB no es un foro compulsorio con jurisdicción exclusiva para atender los reclamos del Apelante.

Finalmente, el 25 de febrero de 2026, el foro de instancia emitió una *Sentencia*[12] declarando *Ha Lugar* la Moción de Desestimación presentada por Genera PR y, en consecuencia, desestimando la Querella presentada por el Sr. Ortiz. Además, el foro apelado le impuso una sanción por temeridad de $5,000.00 al representante legal del Apelante.

---

[9] Véase Entrada #9 del Apéndice del recurso de apelación en SUMAC.
[10] La Regla lee como sigue: "La comparecencia de un abogado o abogada a cualquier vista, conferencia o procedimiento sin estar debidamente preparado(a) podrá ser considerada conducta constitutiva de obstáculo para la sana administración de la justicia. El Tribunal, en el ejercicio de su poder inherente de supervisar la conducta de los abogados y abogadas que postulan ante sí, podrá, a iniciativa propia o a solicitud de parte, imponer sanciones económicas o de otra naturaleza o descalificar a un abogado o abogada que incurra en conducta que constituya un obstáculo para la sana administración de la justicia o infrinja sus deberes hacia el Tribunal, sus representados(as) o sus compañeros(as) abogados(as). 32 LPRA Ap. V, R. 9.3.
[11] Véase Entrada #14 del expediente de Primera Instancia en SUMAC.
[12] Véase Entrada #16 del expediente de Primera Instancia en SUMAC.

Inconforme con la determinación, el Sr. Ortiz acudió ante nos mediante recurso de apelación e hizo los siguientes señalamientos de error:

**ERRÓ EL TPI AL DESESTIMAR EL CASO DE MARRAS POR AUSENCIA DE JURISDICCIÓN AL AMPARO DE LA R. 10.2(1) TODA VEZ QUE ESTE CASO ES DISTINGUIBLE DEL CASO GONZÁLEZ V. MAYAGÜEZ RESORT & CASINO, 2009 TSPR 140 Y AL APLICAR LA DOCTRINA DE IMPEDIMENTO COLATERAL POR SENTENCIA.**

**EL TPI HA ERRADO COMO CUESTIÓN DE DERECHO Y HA ABUSADO DE SU DISCRECIÓN AL IMPONER LA SUMA DE $5,000.00 EN SANCIONES AL SUSCRIBIENTE, LCDO. OVIDIO E. ZAYAS PÉREZ TODA VEZ QUE LA RADICACIÓN DEL CASO DE MARRAS FUE HECHA DE BUENA FE Y COMO CONSECUENCIA LÓGICA ANTE LA DESESTIMACIÓN SIN PERJUICIO DEL PRIMER CASO RADICADO BAJO EL NÚMERO SJ2024CV06454.**

-II-

**A. Jurisdicción exclusiva**

La jurisdicción es el poder o autoridad de un tribunal para considerar y decidir los casos ante su consideración[13].

El Poder Judicial del Estado Libre Asociado de Puerto Rico constituirá un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración[14]. Es decir, los tribunales de Puerto Rico tienen jurisdicción general, salvo que esté limitado por asuntos de competencia o por la materia[15]. La limitación a la autoridad de los tribunales para atender y resolver una controversia sobre un aspecto legal se encuentra en la Constitución o puede ser realizada por el Estado mediante legislación.

La Regla 10.2 de Procedimiento Civil[16] faculta a una parte en un pleito a solicitar la desestimación de la

---

[13] *Rodríguez Vázquez v. Hosp. Auxilio Mutuo*, 2025 TSPR 55, 216 DPR __ (2025); *Cobra Acquisitions, LLC v. Mun. de Yabucoa*, 210 DPR 384, 394 (2022).

[14] Art. V, Sec. 2, Const. ELA, LPRA, Tomo I.

[15] *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586 (2021).

[16] 32 LPRA Ap. V, R. 10.2.

reclamación si el tribunal carece de jurisdicción sobre la materia. Se ha señalado que la falta de jurisdicción sobre la materia acarrea las siguientes consecuencias: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal, como tampoco puede este arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancias de las partes o del mismo tribunal[17]. Cuando un tribunal determina que no tiene jurisdicción sobre la materia, sólo puede así declararlo y desestimar el caso[18].

Como parte del Derecho Administrativo convergen las doctrinas de jurisdicción primaria y agotamiento de remedios administrativos. Ambas, doctrinas de creación judicial. La doctrina de jurisdicción primaria es una doctrina de abstención judicial que persigue lograr uniformidad y congruencia de las decisiones en el campo de derecho administrativo. Lo anterior, por entender que, recurriendo en primera instancia a la agencia encargada de implantar la política pública de su ley habilitadora, permitiría el desarrollo racional de la norma a base de su especialización y el conocimiento producto de la experiencia[19].

---

[17] *Rodríguez Vázquez v. Hosp. Auxilio Mutuo*, *supra*; *MCS Advantage v. Fossas Blanco et al.*, 211 DPR 135, 145 (2023).
[18] *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89 (2020); *Shell v. Srio. Hacienda*, 187 DPR 109, 117 (2012); *González v. Mayagüez Resort & Casino*, 176 DPR 848, 855 (2009).
[19] D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3da ed., Colombia, Ed. Forum, 2013, Sec. 8.3, págs. 562-563.

Ahora bien, la doctrina de la jurisdicción primaria tiene, a su vez, dos vertientes. La primera es la jurisdicción primaria concurrente, que permite que la reclamación se inicie en el foro administrativo o el judicial. Como anticipamos, en estos casos, el tribunal cede la primacía a la agencia, debido a su conocimiento especializado sobre el asunto objeto de la reclamación[20]. De hecho, el Tribunal Supremo de Estados Unidos ha expresado que la aplicación de la doctrina no implica que el ejercicio de jurisdicción del Tribunal ha sido eliminado, sino meramente aplazado o "pospuesto"[21].

La segunda vertiente se refiere a los casos en que la ley establece que el foro administrativo tendrá jurisdicción inicial exclusiva para entender en la reclamación. La jurisdicción primaria concurrente no aplica en estos casos porque la propia ley aclara que no existe. La jurisdicción primaria exclusiva o estatutaria es un mandato legislativo y no una norma de índole jurisprudencial. Por esa razón, cuando la jurisdicción primaria es exclusiva de la agencia, los tribunales no tienen autoridad alguna para atender las reclamaciones en primera instancia[22]. La jurisdicción primaria exclusiva comprende situaciones en que el estatuto implica que no existe jurisdicción concurrente, sino que establece una jurisdicción exclusiva[23].

A pesar de que la designación de la jurisdicción primaria exclusiva debe ser clara y precisa, el legislador no siempre ha usado el término exclusivo. Al

---

[20] *Beltrán Cintrón et al. v. ELA et al.*, *supra*, pág. 103.
[21] *Ortiz v. Panel F.E.I.*, 155 DPR 219, 243 (2001); *U.S v. Philadelphia Nat. Bank*, 374 U.S. 321, 353 (1963).
[22] *Beltrán Cintrón et al. v. ELA et al.*, *supra*, págs. 103-104.
[23] *S.L.G. Semidey Vázquez v. ASIFAL*, 177 DPR 657, 677 (2009); *Rivera Ortiz v. Mun. de Guaynabo*, 141 DPR 257, 268 (1996).

determinar si un estatuto provee o no jurisdicción exclusiva al foro administrativo, es necesario evaluar si así se ha sido dispuesto expresamente en la ley o surge de esta por implicación necesaria. Puntualizamos que la jurisdicción exclusiva no evita la revisión judicial, solamente la pospone hasta tanto el organismo administrativo emita su determinación final. Ahora bien, a pesar de lo anterior, la jurisdicción primaria del foro administrativo puede ceder ante un planteamiento de violación a derechos constitucionales[24].

La evaluación de si una agencia tiene jurisdicción sobre un asunto en particular, requiere analizar el poder que la Asamblea Legislativa le delegó. Para efectuar este análisis, las leyes deben interpretarse a base de la intención legislativa. El sentido atribuido tiene que ser cónsono con el resultado que pretendió el legislador. La interpretación de la ley debe ser conforme a la intención legislativa, la política pública y el interés social que la inspira. Las agencias sólo pueden llevar a cabo las funciones que se le encomendaron legislativamente, las que surgen de su actividad o encomienda y únicamente pueden ejercer los poderes que son indispensables para llevar a cabo sus deberes y responsabilidades[25].

**B. Jurisdicción exclusiva de la Junta Nacional de Relaciones del Trabajo (NLRB por sus siglas en inglés)**

Como norma general, los tribunales estatales tienen jurisdicción o autoridad para atender todo asunto al amparo de las leyes estatales y jurisdicción concurrente

---

[24] *Beltrán Cintrón et al., v. ELA et al., supra*, pág. 104.
[25] *Ayala Hernández v. Consejo de Titulares*, 190 DPR 547, 559 (2014).

con los tribunales federales para atender asuntos que surjan bajo el palio de las leyes federales[26].

En vista de lo anterior, el Congreso de los Estados Unidos reconoció, mediante el *Labor Management Relations Act of 1947*[27], también conocida como Ley Taft-Hartley ("NLRA" O "Ley Taft-Hartley"), jurisdicción exclusiva a la Junta Nacional de Relaciones Laborales ("NLRB") para resolver controversias que involucren prácticas ilícitas del trabajo conforme a dicha legislación[28]. Asimismo, reconoció la aplicación de la doctrina de campo ocupado a la reglamentación de la actividad protegida por la Sec. 157 de la *National Labor Relations Act* o cuando la regulación estatal entra en conflicto con la intención del Congreso[29]. En particular, la referida Sec. 157 dispone lo siguiente:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title[30].

Es decir, la Sec. 157 del NLRA reconoce el derecho de los empleados a organizarse y participar en actividades concertadas con el propósito de negociar colectivamente o de obtener un beneficio mutuo.

El Tribunal Supremo de Puerto Rico ha explicado en varias instancias en cuáles circunstancias se debe

---

[26] *González v. Mayagüez Resort & Casino*, *supra*.
[27] 29 USC sec. 141 et seq.
[28] 29 USC sec. 160; *González v. Mayagüez Resort & Casino*, *supra*, pág. 858; *Garner v. Teamsters Union*, 346 U.S. 485 (1953).
[29] *González v. Mayaguez Resort & Casino, supra*, pág. 858.
[30] 29 USC sec. 157.

aplicar la jurisdicción exclusiva de la NLRB, desplazando así la autoridad de los foros adjudicativos locales. Así, por ejemplo, en *González v. Mayaguez Resort & Casino*, *supra*, un empleado de ese hotel presentó ante el Tribunal de Primera Instancia una querella al amparo del procedimiento sumario que dispone la Ley Núm. 2-1961. El empleado alegó expresamente en su querella que "*la razón de su despido fue por el uso válido de su derecho constitucional de participar en actividades concertadas y a reclamar derechos que como empleado le corresponden*"[31]. Asimismo, manifestó en su querella que su patrono conocía o "*entendía que estaba tratando de organizar a los empleados de su departamento y procedió a despedirlo […]*"[32].

Por su parte, el patrono solicitó la desestimación de la querella bajo el fundamento de que era la NLRB quien tenía jurisdicción exclusiva para adjudicar la controversia. Tanto el foro de instancia como el Tribunal de Apelaciones entendieron inmeritoria la solicitud de desestimación del patrono. Sin embargo, el Tribunal Supremo revocó y desestimó el caso. En su análisis, nuestro más alto foro reconoció que la NLRB posee jurisdicción exclusiva para resolver controversias que involucran una práctica ilícita del trabajo según definidas en la NLRA. Además, dispuso que "*hay jurisdicción exclusiva [de la NLRB] sobre actividades protegidas por la Sec. 157 [de la NLRA] o que constituyen una práctica ilícita del trabajo bajo la Sec. 158* (29 USCA sec. 158)"[33].

---

[31] *González v. Mayagüez Resort & Casino, supra*, pág. 852.
[32] *Íd.*, págs. 852-853.
[33] *Íd.*, pág. 859.

Por lo tanto, a fin de auscultar si un tribunal local tiene la autoridad o jurisdicción para adjudicar controversias de la naturaleza aquí discutida, es necesario examinar si la conducta según alegada "*está sujeta a ser sancionada por la Ley Taft-Hartley…*"[34]. Es importante señalar que "*el análisis de desplazamiento se efectúa tomando en consideración el tipo de conducta involucrada y no la naturaleza del remedio solicitado*"[35].

Con ese análisis doctrinal, el Tribunal Supremo evaluó las alegaciones del empleado consignadas en su querella y notó que este solicitó una reunión con su patrono para discutir situaciones de trabajo que le afectaban tanto a él, como a sus compañeros de trabajo. Asimismo, el Tribunal Supremo consideró que el empleado alegó que fue despedido en represalia por ejercitar su derecho a realizar actividades concertadas y que su despido fue resultado de su solicitud para discutir las condiciones de trabajo que afectaban a todos los empleados en su área de trabajo[36]. Así las cosas, el Tribunal Supremo concluyó que la conducta aseverada en las alegaciones era regulada y protegida por las Secciones 157 y 158 de la Ley Taft-Hartley. Por esa razón, concluyó que la reclamación no podía ser dilucidada ante los foros locales, sino que era el NLRB quien tenía la jurisdicción exclusiva para adjudicarla.

Recientemente, el Tribunal Supremo tuvo la oportunidad de abordar otra controversia similar y aclaró varios asuntos que serán de ayuda para la adjudicación del presente caso. En *Rodríguez Vázquez v.*

---

[34] *Íd.*, pág. 861.
[35] *Íd.*, pág. 862
[36] *Íd.*, pág. 861.

*Hosp. Auxilio Mutuo*[37]*,* dos empleados presentaron unas demandas ante el Tribunal de Primera Instancia en las que reclamaron despido injustificado y represalias contra su patrono, el Hospital Español Auxilio Mutuo. En esa ocasión, los empleados alegaron que fueron despedidos en represalias por haber participado como testigos en una querella que presentó la Unidad Laboral de Enfermeros y Empleados de la Salud, organización sindical de la cual eran miembros, en contra de su patrono ante el Departamento de Salud. Presentaron su reclamo al amparo de la Ley Núm. 115-1991 y la Ley Núm. 80-1976.

Por su parte, el patrono presentó mociones de desestimación basadas en que las reclamaciones de los empleados se encontraban bajo la jurisdicción exclusiva de la NLRB. Sin embargo, el Tribunal de Primera Instancia denegó la desestimación, ya que entendió que en la medida en que las reclamaciones de los empleados estaban fundadas en leyes locales y no así en las Secs. 157 y 158 de la NLRA, el foro local tenía jurisdicción para adjudicar las controversias.

El Tribunal Supremo nuevamente reiteró que el análisis de si aplica la jurisdicción exclusiva de la NLRB, se debe efectuar a la luz del "*tipo de conducta involucrada, y no la naturaleza del remedio solicitado*"[38]. Así pues, "*cuando los hechos alegados por el demandante son (o se podrían argumentar que son) actos de práctica ilícita según la NLRA, ni los tribunales estatales ni los federales tienen jurisdicción*"[39]. En su discusión, el Tribunal Supremo invitó a los tribunales

---

[37] 2025 TSPR 55, 216 DPR ___ (2025).
[38] *Rodríguez Vázquez v. Hosp. Auxilio Mutuo, supra.*
[39] *Íd.*

a "*apreciar si la parte que sostiene la prelación de la NLRA constató que los hechos alegados por el demandante son o se podría argumentar que son actos de práctica ilícita según el NLRA*"[40].

Así hizo el Tribunal Supremo en su análisis, examinó y consignó en su opinión las alegaciones más relevantes de la parte demandante. Por ejemplo, destacó alegaciones tales como las siguientes: (1) que los demandantes eran miembros del sindicato ULEES, el cual los representaba sindicalmente ante su patrono; (2) que los demandantes, en conjunto con otros empleados, promovieron que el sindicato instara ante el Departamento de Salud una Querella en contra de su patrono, por razón de que este último contrató unos estudiantes de anestesia quienes llevaban a cabo funciones que sólo pueden ejecutar enfermeros anestesistas licenciados como lo eran los demandantes; (3) que los demandantes comparecieron como testigos en el proceso de la querella administrativa; (4) que el patrono los despidió como represalia por su participación activa en los procesos de la querella administrativa[41].

Luego de analizar las alegaciones consignadas, el Tribunal Supremo concluyó que "*se podría concluir que estas denuncian actos de práctica ilícita bajo la NLRA*"[42]. Esto debido a que, de ser ciertas y se probaran esas conductas contenidas en las alegaciones, la NLRB "*podría concluir que se constituyó una práctica ilícita del trabajo cuya justipreciación, en virtud de la NLRA,*

---

[40] *Íd.*
[41] *Íd.*
[42] *Íd.*

*recae bajo su jurisdicción exclusiva*"[43]. Cabe señalar que nuestro más alto foro señaló lo siguiente:

> […] si bien la Sec. 7 de la NLRA protege los derechos de los empleados a organizarse y a realizar actividades concertadas con el propósito de ayudarse mutuamente, en las alegaciones ante los tribunales locales no es necesario plasmar el término 'actividades concertadas', o cualquier equivalente, para que opere el desplazamiento ordenado por el Congreso Federal[44].

Así pues, al realizar nuestra tarea adjudicativa, es irrelevante la consideración de si el fundamento de las reclamaciones es alguna ley local o si en las alegaciones se consignaron palabras o frases sacramentales tales como actividad concertada. Por el contrario, la clave para nuestra tarea de determinar a cuál foro corresponde atender la controversia consiste en examinar la conducta involucrada, según fue alegada.

## C. Costas y Honorarios de abogado

En nuestro ordenamiento jurídico, la imposición de costas está regulada por la Regla 44.1 de Procedimiento Civil[45]. Sobre este particular, la regla dispone lo siguiente:

> Las costas se concederán a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión, excepto en aquellos casos en que se disponga lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos en que se incurra necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra[46].

Por otro lado, la citada regla establece que la imposición de honorarios de abogado procede cuando una parte ha actuado con temeridad o frivolidad.[47] En parte

---

[43] *Íd.*
[44] *Íd.*
[45] 32 LPRA Ap. V, R. 44.1.
[46] 32 LPRA Ap. V, R. 44.1 (a).
[47] *Torres Vélez v. Soto Hernández*, 189 DPR 972, 993 (2013).

pertinente, la Regla 44.1 de Procedimiento Civil, *supra*,

establece lo siguiente:

> En caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta […][48].

A pesar de que la citada regla no define en qué

consiste una conducta temeraria, la jurisprudencia la ha

descrito como "*aquellas actuaciones de un litigante que*

*lleven a un pleito que pudo evitarse, que provoquen la*

*prolongación indebida del trámite judicial o que*

*obliguen a la otra parte a incurrir en gastos*

*innecesarios para hacer valer sus derechos*"[49]. Así, la

penalidad que se impone por conducta temeraria tiene

como fin "*disuadir la litigación frívola y fomentar las*

*transacciones mediante sanciones que compensen a la*

*parte victoriosa por los perjuicios económicos y las*

*molestias producto de la temeridad de la otra parte*"[50].

También se ha indicado que el propósito de la imposición

de honorarios es penalizar a la parte que por su

"*terquedad, obstinación, contumacia e insistencia en una*

*actitud desprovista de fundamentos, obliga a la otra*

*parte, innecesariamente, a asumir las molestias, gastos,*

*trabajo e inconvenientes de un pleito*"[51]. Es decir, que

es temerario quien torna necesario un pleito frívolo o

provoca su indebida prolongación, obligando a la otra

parte a incurrir en gastos innecesarios[52].

---

[48] 32 LPRA Ap. V, R. 44.1 (d).
[49] *SGL González-Figueroa v. SGL et al.*, 209 DPR 138, 148 (2022).
[50] *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 505 (2010).
[51] *C.O.P.R. v. S.P.U.*, 181 DPR 299, 342 (2011); *Torres Vélez v. Soto Hernández, supra.*
[52] *Colón Santos v. Coop. Seg. Mult. P.R.*, 173 DPR 170, 188 (2008); P.R. Oil v. Dayco, 164 DPR 486, 511 (2005); *Domínguez v. GA Life*, 157 DPR 690, 706 (2002).

La decisión sobre si procede la imposición de honorarios de abogado descansa en la sana discreción del juzgador[53]. Determinada la existencia de temeridad, el tribunal deberá tomar en consideración una serie de factores para poder calcular la cantidad que concederá, a saber: "*(1) el grado de temeridad; (2) el trabajo realizado; (3) la duración y naturaleza del litigio; (4) la cuantía involucrada, y (5) el nivel profesional de los abogados*"[54] La cantidad concedida en honorarios de abogado al amparo de la Regla 44.1 de Procedimiento Civil, *supra*, no necesariamente tiene que ser equivalente al valor de los servicios legales prestados, sino a "*aquella suma que en consideración al grado de temeridad y demás circunstancias el tribunal concluye que representa razonablemente el valor de esos servicios*"[55].

-III-

En el presente caso, el Sr. Ortiz alega que el foro de instancia erró al desestimar el caso por falta de jurisdicción sobre la materia y aplicar la doctrina de impedimento colateral por sentencia. Además, señaló que el foro apelado abusó de su discreción al imponerle una sanción de $5,000.00 al Lcdo. Zayas Pérez.

Según surge de los autos del caso, el Sr. Ortiz alega que la relación de empleo con Genera PR culminó el 24 de junio de 2024 "*en evidentes represalias por sus expresiones protegidas ante foros administrativos y/o funcionarios y/o representantes en una posición de*

---

[53] *SGL González-Figueroa v. SLG et al.*, supra, pág. 150.
[54] *C.O.P.R. v. S.P.U.*, *supra*, pág. 342-343.
[55] *Santos Bermúdez v. Texaco P.R., Inc.*, 123 DPR 351, 357 (1989).

*autoridad de la empresa querellada mediante sus procedimientos internos*"[56].

Tal y como indicamos en el acápite II, la jurisdicción es el poder o autoridad que tiene un tribunal para decidir la controversia que tiene ante sí. Ya sea por mandato constitucional o mediante legislación, se puede limitar la autoridad que tiene un tribunal para resolver una controversia. Tal es el caso del *National Labor Relations Act.* La Sección 158 de dicha legislación, establece las prácticas que se considerarán ilegales y sobre las cuales el *National Labor Relations Board* tiene jurisdicción exclusiva. En lo pertinente a la controversia de epígrafe, la Sección 158, inciso (4) dispone que se considerará una práctica ilegal despedir o discriminar a un empleado por este haber presentado un cargo o haber prestado testimonio (contra el patrono)[57]. Conforme a lo anterior, la conducta prohibida planteada por el Apelante es de jurisdicción exclusiva del NLRB.

Según surge del expediente de epígrafe, la Sentencia emitida por el foro de instancia el 11 de septiembre de 2025 fue sin perjuicio. Dado lo anterior, el Apelante plantea que tal determinación posibilita una posterior presentación de la misma reclamación. Si bien es cierto que una desestimación sin perjuicio permite que la parte afectada presente el recurso nuevamente, es de suma importancia que este se presente ante el foro con jurisdicción. En el caso ante nos, el foro apelado desestimó la Querella sin perjuicio por carecer de jurisdicción sobre la materia. Siendo así, le correspondía al Sr. Ortiz presentar su causa de acción

---

[56] Véase el recurso apelativo, pág. 4.
[57] "*to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this Act*".

ante el NLRB, foro con jurisdicción exclusiva para atender reclamos como los que alega.

Cabe señalar que, respecto a la imposición de honorarios por temeridad, aplica el mismo análisis esbozado. Una vez recibida la Sentencia desestimando sin perjuicio la causa de acción, el Lcdo. Zayas Pérez tenía el deber de acudir al foro con jurisdicción exclusiva, en lugar de presentar la controversia de epígrafe por segunda ocasión ante el foro de instancia. Al así actuar provocó una prolongación indebida en el trámite judicial, obligando a la parte apelada a incurrir en gastos innecesarios. Siendo así, el Lcdo. Zayas Pérez incurrió en conducta temeraria, por lo cual confirmamos la determinación del foro apelado a tales efectos.

-IV-

A la luz de los fundamentos que anteceden, ***confirmamos*** la Sentencia apelada.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

La juez Aldebol Mora disiente en parte, por considerar que la radicación del caso de epígrafe, cuya desestimación previa fue sin perjuicio, no constituyó una actuación temeraria, aun cuando el fundamento de la primera desestimación haya sido falta de jurisdicción sobre la materia.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones